UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 10-48-GWU

SUSAN PERRY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

          in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

    In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The procedural history of this case is tortuous. The plaintiff, Susan Perry, filed applications for DIB and SSI on November 3, 1998, with a protective filing date of January 9, 1998, alleging disability beginning December 31, 1996 due to back pain, depression and a mass on her ovaries. (Tr. 107-9, 116, 339-40).

These applications were denied in decisions by an Administrative Law Judge (ALJ) on March 24, 1999 (Tr. 81-7), and, following a remand by the defendant's Appeals Council, again on August 14, 2001 (Tr. 62-74). The plaintiff filed a new SSI application, which was granted at the initial level by the state agency with an onset date of August 1, 2001. (Tr. 44, 356). The Appeals Council affirmed the state agency's disability finding and remanded the case for further consideration of the period before August 1, 2001. (Tr. 356-8). Another ALJ again found the plaintiff not disabled for this period in a July 7, 2004 decision. (Tr. 41-50). The Appeals Council

remanded the case again in 2007 (Tr. 367-9), causing a fourth ALJ denial to be issued on August 14, 2008 (Tr. 20-32), the subject of the present appeal following the Appeals Council's denial of review.

The ALJ in the 2008 decision found that for the relevant period between December 31, 1996 and the Date Last Insured (DLI) of June 30, 2001, the plaintiff had a "severe" impairment consisting of being status-post three back surgeries. (Tr. 25). Nevertheless, she retained the residual functional capacity to perform a full range of sedentary level exertion, limited only by a restriction on climbing ropes, ladders, scaffolds, ramps, and stairs. (Tr. 27). The ALJ proceeded to apply Rule 201.27 of the Commissioner's Medical-Vocational Guidelines (the "grids") applicable to an individual of the plaintiff's age, high school equivalency education, and unskilled work experience, which directs a conclusion of "not disabled." (Tr. 31).[1]

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. The relevant period is between December 31, 1996 and the DLI of June 30, 2001.

Although the plaintiff was treated for depression and alcohol abuse as early as 1990, particularly following the death of one of her sons and his friend in a 1992

---

[1] While finding that the plaintiff "could in all probability" return to her past relevant work as an office worker and bagger of cedar shavings, the ALJ proceeded to Step 5 of the sequential evaluation "out of an abundance of caution." (Tr. 30). Although some non-exertional restrictions are present, the ALJ correctly found that they would have little or no effect on the occupational base. (Tr. 31). See Social Security Ruling (SSR) 96-9p, at *7.

automobile accident (e.g., Tr. 167-81), and underwent an interlaminar exploration and fusion of her L4-5 vertebrae with plating in November, 1993 (Tr. 193), she continued to work until 1996 (Tr. 449).

For the relevant period between 1996 and 2001, several physicians offered opinions regarding physical functional restrictions, but only Dr. Joseph Dobner, a treating source, ever reported greater restrictions than found by the ALJ. On October 15, 1998, Dr. Dobner completed a Medical Report stating that he had seen the plaintiff monthly since March, 1993. (Tr. 302). His only specific diagnosis was "moderate" knee bursitis, although the report also mentions limitations due to lumbar radiculitis and rheumatoid arthritis. (Tr. 303). He limited lifting to five to ten pounds, one hour a day, with standing and walking limited to 3-4 hours per eight hour day, with breaks every 30 minutes. (Id.). Sitting was not specifically limited, but a change of position was required every hour. (Id.). "No" was written next to every postural activity, and there were also said to be unspecified restrictions on pushing, pulling, and working around moving machinery and vibration. (Tr. 304). Dr. Dobner did not specify the medical findings supporting the non-exertional restrictions, as the form requests. (Id.).

The plaintiff maintains that it was erroneous to reject the opinion of the treating source, asserting it was fully consistent with the record. Generally, the opinion of a treating source is entitled to controlling weight, if it is supported by sufficient objective findings and not inconsistent with other evidence of record.

7

Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  However, the restrictions are, in fact, not consistent with other evidence.  In addition to the lack of specificity in the Medical Report itself, Dr. Dobner's opinion is contradicted by his contemporaneous office notes.  The plaintiff had been involved in a motor vehicle accident in March, 1998, but a cervical spine x-ray showed only straightening, which was said to be a non-specific finding.  She was diagnosed with a neck and back strain, along with an abdominal contusion.  (Tr. 228-9).  On June 1, 1998, she stated she was not any better and could not turn her head.  X-rays were normal, and Dr. Dobner wrote that "I cannot explain why she is having these symptoms."  (Tr. 279).  At the end of the month, she was reporting pain in her back and leg, but reflexes were symmetrical, voluntary motor testing within normal limits, and "[e]verything checks out okay."  (Tr. 281).  He noted that Dr. Myers, an orthopedist, "has not really found anything to fix either."  (Id.).  On complaints of bilateral knee pain for five or six months in September, 1998, along with worsening back pain, Dr. Dobner found that both knees were ligamentously stable, had a good range of motion, had moderate joint line tenderness on the right, and mild to moderate crepitus.  (Tr. 309).  X-rays showed "minimal" arthritic changes. (Id.).  Dr. Dobner assessed patellofemoral pain syndrome, and possible lumbar radiculitis and rheumatoid arthritis. (Id.).  However, followup testing for rheumatoid arthritis was negative, and he concluded that there was, in fact, no inflammatory component.  (Tr. 310).  He stated that he could not explain his patient's symptoms.

Thus, a reasonable finder of fact could have concluded that Dr. Dobner's restrictions were not supported by his objective findings and not entitled to controlling weight.

In addition, other sources during the relevant period found restrictions consistent with or less than determined by the ALJ. The aforementioned Dr. Myers felt that her symptoms were most consistent with a "strain-type injury," and while he recommended "some activity restrictions," these were not specified. (Tr. 267, 311). He continued to treat the plaintiff and determined that she had a herniated disc at C5-6 based on an MRI in the spring of 2000, but after a diskectomy was performed later in the year, he indicated that the neck pain was a "whole lot better." (Tr. 337-8). No functional restrictions are given. Dr. William Keller stated that as of April 22, 1998, the abdominal pain and whiplash symptoms from the previous month's motor vehicle accident had "pretty much resolved." (Tr. 253). Dr. Robert Keisler performed a consultative examination on May 24, 2001, and listed restrictions consistent with sedentary-level work. (Tr. 324-5). State agency reviewers listed restrictions consistent with light and medium level work. (Tr. 260-1, 283-91, 404-13). Slightly after the relevant period, on December 1, 2001, Dr. Scott Dube performed a consultative physical examination and concluded that the plaintiff could perform jobs as long as she avoided lifting over twenty pounds, and did not frequently bend or crawl. (Tr. 403).

Therefore, the ALJ's physical restrictions are supported by substantial evidence.

The plaintiff also alleges that she has been disabled by severe depression since December 1, 1996, noting that she was awarded benefits on a subsequent application due to this condition beginning August 1, 2001. The ALJ found that depression was not "severe" during the relevant period, based on the incorporation of such a finding by the Appeals Council on September 28, 2007. (Tr. 26, 368). The Appeals Council was, in turn, affirming a finding by a previous ALJ in a July 7, 2004 decision, which specifically gave "great weight" to the opinion of a Medical Expert (ME), Dixie Moore, Ph.D. (Tr. 445-48). Dr. Moore appeared at a June 8, 2004 administrative hearing and succinctly testified that, although the plaintiff had a medically determinable mental impairment consisting of an affective disorder not otherwise specified and alcohol dependence in remission, she did not meet any of the "B" or "C" criteria of the Commissioner's Listings of Impairment. (Tr. 465-6).

The plaintiff was prescribed medication for depression during the relevant period (e.g., Tr. 251-3), but no medical source indicates that she was disabled by the condition or had any functional limitations as a result. Chris Oetken, Psy. D., conducted a consultative psychological examination on May 4, 1998, and diagnosed only alcohol dependence in sustained full remission. (Tr. 266). A state agency psychological reviewer, L. J. Perritt, Ph.D., reviewed the evidence as of July 7, 1998 and opined that the plaintiff did not have a "severe" mental impairment. (Tr. 293-4).

The plaintiff argues that it is unreasonable to expect that she could have been found disabled based upon a January 4, 2002 psychological examination by Paul A. Ebben, Psy. D. but not be found disabled back to 1996.  However, the Commissioner is not required to provide evidence that would eliminate 1996 as a possible onset date; rather, his burden is met when he provides substantial evidence that the plaintiff's disability began in 2001.  <u>Willbanks v. Secretary of Health and Human Services</u>, 847 F.2d 301, 303 (6th Cir. 1988).  Since the only medically determinable finding made by Dr. Oetken in 1998 was alcohol dependence in remission, and Dr. Perritt (who had access to medical records in which the plaintiff was prescribed medication for depression with no specific restrictions) found no evidence of a "severe" mental impairment, the Commissioner carried his burden.

The decision will be affirmed.

This the 28th day of June, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**